IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICHAEL BERK, <br> BOP Register No. 43739-037, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:18-cv-2301-X-BN |
| K. WIGGINS, ET AL. | § § § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
<u>UNITED STATES MAGISTRATE JUDGE</u>**

Plaintiff Michael Berk, a federal prisoner incarcerated at FCI Seagoville, serving a total sentence of 200 months (for two convictions for enticing a minor) plus a consecutive sentence of 12 months (for a conviction for obtaining and possession of prohibited objects in prison), brings this *pro se* civil action against employees of the Federal Bureau of Prisons ("BOP") seeking declaratory and injunctive relief and monetary damages based on alleged violations of his constitutional rights. *See* Dkt. Nos. 3 & 7. The Court has referred Berk's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Brantley Starr. And the undersigned enters these findings of fact, conclusions of law, and recommendation that, because Berk has already been allowed leave to amend his allegations, the Court should dismiss his claims with prejudice.

**Applicable Background**

Through his complaint [Dkt. No. 3], as amended by his verified responses to

the Court's screening questionnaire [Dkt. No. 7], Berk alleges that Defendant A. Guzman's refusal to provide him a certain blank BOP form stymied his ability to initiate the grievance process and thus "violated [his] First Amendment right to lodge a grievance and obstructed [his] First Amendment right to access the courts." Dkt. No. 7 at 2-3; *see also* Dkt. No. 3 at 3, 6.

Somewhat related to his claim against Guzman, Berk also alleges that Defendant K. Wiggins threatened to retaliate against him for Berk's filing a complaint to Wiggins's supervisor expressing concerns about the operation of the band program. *See* Dkt. No. 7 at 4-5; Dkt. No. 3 at 3,6; *see also* Dkt. No. 7 at 5 ("That [Wiggins] promised to subject me to disciplinary action without cause if he heard anything more about my complaints also showed his interest to infringe my due process rights for the purpose of abusing me in retaliation for my exercise of my First Amendment rights in having voiced my concerns appropriately – as well as to chill my further pursuit of such grievances or legal proceedings by intimidating me into silence, another violation of my rights.").

Berk finally alleges that the warden at Seagoville is liable for the alleged violations committed by his employees, Guzman and Wiggins, by "personally authorized others to act in violation of [Berk's] rights." Dkt. No. 7 at 7; *see also id.* at 6-8; Dkt. No. 3 at 3, 6.

Berk seeks declaratory and injunctive relief against the individual defendants as well as "nominal damages and such other relief ([including] punitive damages) as necessary to deter further abuse" and that he be compensated "for prosecution of this

suit." Dkt. No. 3 at 4.

## Legal Standards

Under the Prison Litigation Reform Act ("PLRA"), where a prisoner – whether he is incarcerated or detained pending trial – seeks relief from a governmental entity or employee, a district court must, on initial screening, identify cognizable claims or dismiss the complaint, or any portion of the complaint, that "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

The fails-to-state-a-claim language of this statute (as well as its sister statute, Section 1915(e)(2)(B)) "tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969, at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has

"suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g., Starrett*, 2018 WL 6069969, at *2 (citations omitted)).

Dismissal for failure to state a claim under either Section 1915A(b)(1), Section 1915(e)(2)(B)(ii), or Rule 12(b)(6) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the PLRA, the IFP statute, nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson*, 574 U.S. at 11. Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is

implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679).

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Analysis

Berk filed this action using the Court's form prisoner's civil rights complaint. *See generally* Dkt. No. 3. And, since he brings civil rights claims against individual federal employees, this action is fairly interpreted as asserting claims under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), which affords a cause of action against federal actors that mirrors but is not "'the substantial equivalent of 42 U.S.C. § 1983,'" applicable to state actors. *Ziglar v.*

*Abbasi*, 137 S. Ct. 1843, 1855 (2017) (citation omitted).

I. Berk may only pursue relief against the defendants in their personal capacities.

Berk does not specify in which capacity (or capacities) he has sued each federal employee. Even so, he "may bring a *Bivens* action against individual [federal employees] for [an] alleged constitutional violation, but he may not bring an action against the United States, the BOP, or BOP [employees] in their official capacities as such claims are barred by the doctrine of sovereign immunity." *Gibson v. Fed. Bureau of Prisons*, 121 F. App'x 549, 551 (5th Cir. 2004) (per curiam) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001); *Hafer v. Melo*, 502 U.S. 21, 25 (1991)); *see also Multi Denominational Ministry of Cannabis & Rastafari, Inc. v. Gonzales*, 474 F. Supp. 2d 1133, 1141 (N.D. Cal. 2007) ("A *Bivens* action does not lie against federal agencies or the United States, which possess sovereign immunity; such actions may be brought only against named federal officers or agents in their personal capacity." (citing *FDIC v. Meyer*, 510 U.S. 471, 483-86 (1994))).

Accordingly, any official capacity claims must be dismissed.

II. Berk may not seek non-monetary damages from the individual defendants.

To the extent that Berk seeks non-monetary relief through a suit against federal employees named in their individual capacities, *see* Dkt. No. 3 at 4, such relief is unavailable through this action, because "relief under *Bivens* does not encompass injunctive and declaratory relief where, as here, the equitable relief sought requires official government action." *Solida v. McKelvey*, 820 F.3d 1090, 1093-94 (9th Cir. 2016) (citing *Higazy v. Templeton,* 505 F.3d 161, 169 (2d Cir. 2007); *Simmat v. U.S.*

*Bureau of Prisons*, 413 F.3d 1225, 1231 (10th Cir. 2005)); *see also Schanzle v. Haberman*, A-18-CV-00933-RP-SH, 2019 WL 3536822, at *2 n.2 (W.D. Tex. Aug. 1, 2019) ("In addition, Schanzle's request for injunctive relief is not appropriate in a *Bivens* action. 'The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities.' Thus, courts have found that injunctive and declaratory relief are not available in a *Bivens* action." (quoting *Higazy*, 505 F.3d at 169; citing *Solida*, 820 F.3d at 1093)).[1]

III. <u>Berk fails to show that *Bivens* should be expanded to the context of this suit.</u>

That Berk seeks relief under *Bivens* based on alleged constitutional violations by federal actors raises another – significant – obstacle to his ability to allege plausible claims given the context of this case. *Bivens*, unlike Section 1983, is not a Congressional statute that "entitles an injured person to money damages if a state official violates his or her constitutional rights." *Abbasi*, 137 S. Ct. at 1854 ("Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.").

The United States Supreme Court "has approved of an implied damages

---

[1] *Cf. Solida*, 820 F.3d at 1096 ("The Ash Meadows Refuge Manager might be capable of effecting the remedy Roca Solida seeks, but McKelvey as an individual has no authority to do so. A *Bivens* action is not necessary in suits, such as this one, which seek equitable relief against the federal government, because the Administrative Procedure Act waives sovereign immunity for such claims. Roca Solida may yet be able to obtain the equitable relief it wants, just not against McKelvey as an individual." (citing 5 U.S.C. § 702)).

remedy under the Constitution itself" only three times – in *Bivens*, to enforce "a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures" in violation of the Fourth Amendment; in *Davis v. Passman*, 442 U.S. 228 (1979), holding "that the Fifth Amendment Due Process Clause gave [a Congressman's administrative assistant] a damages remedy for gender discrimination"; and in *Carlson v. Green*, 446 U.S. 14 (1980), holding "that the Eighth Amendment Cruel and Unusual Punishments Clause gave [a prisoner] a damages remedy for failure to provide adequate medical treatment." *Abbasi*, 137 S. Ct. at 1854-55.

In *Abbasi*, the Supreme Court further "stressed that any extension of *Bivens* to new factual scenarios is now a '"disfavored" judicial activity.'" *Maria S. ex rel. EHF v. Garza*, 912 F.3d 778, 783 (5th Cir. 2019) (quoting *Abbasi*, 137 S. Ct. at 1857 (quoting, in turn, *Iqbal*, 556 U.S. at 675)); *see also Oliva v. Nivar*, ___ F.3d ____, No. 19-50795, 2020 WL 5227472, at *2 (5th Cir. Sept. 2, 2020) ("*Bivens* was the product of an '*ancien regime*' that freely implied rights of action. That regime ended long ago. Today, *Bivens* claims generally are limited to the circumstances of the Supreme Court's trilogy of cases in this area …." (citations omitted)).

Whether a *Bivens* cause of action exists "is 'antecedent' to the other questions presented" in a suit like Berk's, such as whether there has been a constitutional violation. *Hernandez v. Mesa*, 137 S. Ct. 2003, 2006 (2017) (citation omitted). And, today, it is not clear that courts "have the [ ] liberty" to skip "the antecedent *Bivens* question." *Petzold v. Rostollan*, 946 F.3d 242, 256 (5th Cir. 2019) (Oldham, J.,

- 8 -

concurring in the judgment) ("After *Abbasi* and *Hernandez*, once we determine the plaintiff has no cause of action, we should say so and no more." (citations omitted)).

So, the Court should first turn to the "two part inquiry for determining whether to allow a *Bivens* cause of action: (1) whether the instant case involves a 'new context' that is distinct from prior *Bivens* cases and (2) whether any 'special factors' preclude extending *Bivens* to this 'new context.'" *Maria S.*, 912 F.3d at 784 (quoting *Hernandez v. Mesa*, 885 F.3d 811, 816-18 (5th Cir. 2018) (en banc)); *accord Oliva*, 2020 WL 5227472, at *2 ("Courts confronting *Bivens* claims generally 'must ask two questions. First, do [the plaintiff's] claims fall into one of the three existing *Bivens* actions? Second, if not, should we recognize a new *Bivens* action here?'" (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019))).[2]

### A. New Context

"The proper test for determining whether a case presents a new *Bivens* context is" whether it is "different in a meaningful way from

---

[2] *See also Begay v. Leap*, No. 3:17-cv-2639-N-BT, 2019 WL 1318410, at *2 (N.D. Tex. Feb. 26, 2019) ("Though expanding *Bivens* is now a disfavored judicial activity, the Supreme Court has not foreclosed the possibility. The Supreme Court held that in considering a request for a new *Bivens* remedy, it first looks to 'whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages,' and second, even if there is no alternative, whether there are 'any special factors counselling hesitation before authorizing a new kind of federal litigation.' The Supreme Court has not defined 'special factors counselling hesitation,' but has noted that they encompass those things that cause a court to hesitate before determining that it 'is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed.' Implying new causes of action under the Constitution implicates separation-of-powers concerns such that '[i]n most instances, the Court's precedents now instruct, the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability.'" (citations omitted)), *rec. accepted*, 2019 WL 1315901 (N.D. Tex. Mar. 22, 2019).

> previous *Bivens* cases decided by" the Supreme Court. *Ziglar*, 137 S. Ct. at 1859. A meaningful difference may include the Constitutional right at issue, the statutory or other legal mandate under which the officer was operating, or the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 1860. "[E]ven a modest extension is still an extension." *Id.* at 1864.

*Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) (In sum, "the proper test is whether the case differs in a meaningful way from *Bivens*, *Davis*, or *Carlson*." (citing *Abbasi*, 137 S. Ct. at 1859; *Loumiet v. United States*, 948 F.3d 376, 381-82 (D.C. Cir. 2020))).

Berk's *Bivens* claims are based on alleged First Amendment violations, which is not only a meaningful difference from *Bivens*, *Davis*, and *Carlson* but also a clear basis for their dismissal.

> The problem for [Berk] is not just that there has been a long drought since the Court last recognized a new *Bivens* action or even that the Court has cut back on the three constitutional claims once covered. What's harder still is that the Court has never recognized a *Bivens* action for any First Amendment right, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012), and it rejected a First Amendment retaliation claim decades ago for federal employees, *Bush v. Lucas*, 462 U.S. 367, 368 (1983). There's something to be said for leaving it at that and pointing out that the best idea for people in [Berk's] situation is to urge Congress to create a cause of action for constitutional claims against federal officials like the one used against state officials. *See* 42 U.S.C. § 1983.

*Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020); *see also, e.g.*, *Houck v. Denham*, No. 15-cv-00894-KMT, 2017 WL 11425592, at \*5 (D. Colo. Mar. 27, 2017) ("With respect to Plaintiff's First Amendment claim, the Supreme Court has refused explicitly to recognize a *Bivens* claim based upon an alleged First Amendment violation." (citing *Iqbal*, 556 U.S. at 675; *Bush*, 462 U.S. at 390)); *id.* ("'Conceivably, the Court has not recognized such claims in the context of claims by prison inmates

because prisoners may pursue relief under the Federal Tort Claims Act or claims for injunctive relief based on an alleged violation of the First Amendment.'" (citations omitted)); *Begay*, 2019 WL 1318410, at \*5 ("[B]ecause the Supreme Court has not determined that *Bivens* provides a remedy against federal officials for First Amendment violations, and the Supreme Court has cautioned against expanding *Bivens* in new contexts – particularly where, as here, special factors counsel hesitation and a plaintiff has alternative remedies – the Court should dismiss Plaintiff's First Amendment retaliation claim against Defendant.").

### B. Special Factors

The administration of the federal prison system further qualifies as a special factor that should prevent the Court's creating an implied cause of action under *Bivens* for the contexts presented by this case.

> "[A] *Bivens* remedy will not be available if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Ziglar*, 137 S. Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18). A special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong. *Id.* at 1858. The court's focus is on maintaining the separation of powers: "separation-of-powers principles are or should be center to the analysis." *Hernandez*, 885 F.3d at 818 (quoting *Ziglar*, 137 S. Ct. at 1857). The only relevant threshold – that a factor "counsels hesitation" – is remarkably low. *See id.* at 822. If any special factors do exist, then "'courts must refrain from creating'" an implied cause of action in that case. *Maria S.*, 912 F.3d at 784 (quoting *Ziglar*, 137 S. Ct. at 1858).

*Canada*, 950 F.3d at 309 (footnote omitted); *see also Abbasi*, 137 S. Ct. at 1857-58 (observing that a court's special factors inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed"); *Smith v.*

*Shartle*, No. CV-18-00323-TUC-RCC, 2019 WL 5653444, at *3 (D. Ariz. Oct. 31, 2019) ("This requires courts to assess the impact on governmental operations systemwide, including 'the burdens on Government employees who are sued personally, as well as the projected costs and consequences to the Government itself.'" (quoting *Abbasi*, 137 S. Ct. at 1858)).

> As the district court in *Smith v. Shartle* observed,
>
> "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new *Bivens* claim." Congress passed the [PLRA], which "suggests that Congress does not want a damages remedy, which is itself a factor counseling hesitation." Indeed, the Supreme Court noted:
>> Some 15 years after *Carlson* was decided, Congress passed the [PLRA] of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs.... [T]he Act itself does not provide for standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.
>
> *Ziglar*, 137 S. Ct. at 1865 (citation omitted).

*Smith v. Shartle*, 2019 WL 5653444, at *4 (citations and footnote omitted); *see also Callahan*, 965 F.3d at 524 ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.' That suggests a considered decision not to extend a damages remedy to First Amendment violations." (quoting *Abbasi*, 137 S. Ct. at 1865; citations omitted)); *Smith v. Shartle*, 2019 WL 5653444, *4 n.1 (As "the PLRA is not a right to relief itself, but rather a

limit on when inmates may raise federal claims," "the PLRA prohibits a federal damages remedy when alternate remedies – such as an administrative grievance, habeas corpus, or an injunction – are available to prisoners." (citations omitted)).

## Recommendation

The Court should dismiss Plaintiff Michael Berk's complaint as amended with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 6, 2020

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE